**UNITED STATES of America, Appellee,**

v.

**Mahomud RAWWAD,
Defendant, Appellant.**

No. 86–1344.

United States Court of Appeals,
First Circuit.

Argued Oct. 9, 1986.

Decided Dec. 22, 1986.

William A. Brown, by Appointment of the Court, with whom Brown & Prince, Boston, Mass., was on brief, for defendant, appellant.

Sydney Hanlon, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The appellant, Mahomud Rawwad, and four other men were convicted of conspiring to possess heroin in violation of 21 U.S.C. § 846. The basic facts of the conspiracy are set out in our previous opinion, *United States v. Abou-Saada*, 785 F.2d 1 (1st Cir.1986), where we affirmed the convictions of three of appellant's co-defendants. Rawwad has appealed separately.

Rawwad's primary claim is that the district court should have severed his case from that of his co-defendants. Rawwad points out that he was a comparatively minor figure in the conspiracy, his alleged role being that of a courier (for either a heroin sample or an airline receipt for a package containing heroin). The evidence against him basically consisted of a telephone conversation, recorded on May 18, 1984, during which Rawwad agreed to meet someone to pick up something concealed in a can of shaving cream and the testimony of a witness who observed that meeting and Rawwad's evasive movements thereafter. The jury concluded that, under the circumstances, the evidence showed his participation. Although Rawwad does not dispute the sufficiency of the evidence, he does say that its quantity and quality made it unfair to try him together with other members of the conspiracy.

The difficulty with this argument lies in the case law holding to the contrary. The facts that a particular defendant plays a minor role and that the evidence against him can be presented quickly do not make it *automatically* unlawful to try him with more important figures. *See United States v. Mastroianni*, 749 F.2d 900, 914 (1st Cir.1984); *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977). Rather, the question of whether the prejudicial aspects of joinder in such a case outweigh its practical necessity is primarily up to the trial court. A trial court's decision allowing a single trial is reversible only if the defendant makes a "strong showing of prejudice." *See United States v. Porter*, 764 F.2d 1, 12 (1st Cir.1985); *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir.1983). Here, after examining the record, we can find no actual prejudice; we can find only that same possible risk of prejudice that almost always exists when multiple defendants with different roles are tried together. *See United States v.*

*Palow,* 777 F.2d 52, 56 (1st Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986) (citing *United States v. Greenleaf,* 692 F.2d 182, 187 (1st Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983)).

■ Moreover, the judge acted affirmatively to minimize the risk of prejudice to the appellant. The judge instructed the jury that its findings with respect to one defendant should have no bearing on its verdict regarding any other. He warned the jury against guilt by association; he explained that the "membership of any defendant in a conspiracy must be established on the basis of the evidence as to what he himself did and what he himself said." We see no reason why the jury could not follow these directions. *See Porter,* 764 F.2d at 13. Although appellant now says that the judge should have given additional limiting instructions, he did not ask for them below. Unless the judge committed plain error, Rawwad therefore waived the objection. *See Palow,* 777 F.2d at 54; *United States v. Bayko,* 774 F.2d 516, 517–18 (1st Cir. 1985). We believe that the jury instructions described above sufficiently safeguarded the appellant against "spillover" from his co-defendants' cases; the decision of the judge not to say still more does not amount to plain error.

■ Rawwad's next argument is that he was prejudiced by the improper admission of an incriminating statement made by a co-defendant. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The statement in question, introduced through the testimony of DEA agent Patricia Meahl, was the following:

[El-Debeib] told me in the previous week somebody had given him a receipt, an airline package receipt, to go to the airport and pick up a package for him. He thought this had occurred like about a week before, maybe on the 24th of May, 1984. He told me somebody had given him the receipt, that he had gone to the airport to pick up a package. He said that the name on the package was Rowd, and that when he went in to pick up the packages, that the person behind the desk told him that he could not pick them up, that the woman had to come herself to get them. At that time he told me that he then returned the receipt, the airway bill receipt, to the person who had initially given it to him on the day that he had met him.

.    .    .    .    .

[H]e told me that he had previously known [the person who gave him the receipt], that he had known him from Lebanon, and he had seen him the week before the day we were speaking, probably around the 24th.

The conclusive answer to Rawwad's claim that the statement prejudiced him is that the jury had no particular reason to think that he was the person who gave El-Debeib the airline receipt. El-Debeib identified the person as someone he had seen around the 24th. The jury was not especially likely to think that Rawwad had talked to El-Debeib around May 24 unless it *already* believed Rawwad was a conspirator. In that case, El-Debeib's statement added nothing of consequence. It is conceivable that the jury could have (wrongly) inferred that El-Debeib was referring to Rawwad from the fact that Rawwad previously had been linked with the airline package receipt. If the jury believed that, however, it already accepted the government's theory of guilt, and El-Debeib's statement could have added nothing. The reference to the package with the name 'Rowd' written on it was theoretically incriminating, but since the package itself was admitted in evidence, El-Debeib's reference added nothing significant. The mere fact of corroboration is not enough to warrant finding a *Bruton* violation. *See United States v. DiGregorio,* 605 F.2d 1184, 1190 (1st Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979).

■ Finally, Rawwad asserts that the judge erred in permitting more than fifteen pounds of heroin to be sent with the jury to the deliberation room. Rawwad objected on the ground that doing so was "inflam-

matory." The heroin had been properly admitted in evidence, however. It had been sent to the jury room along with the other exhibits in the case. We can find no reason in the record for believing that the presence of the heroin would be particularly inflammatory, and Rawwad has cited no case law holding that it would. *See United States v. Stone*, 472 F.2d 909, 914 (5th Cir.1973), *cert. denied*, 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 482 (1980) ("Whether ... evidentiary exhibits properly admitted should or should not accompany the jury to the jury room is a discretionary matter for the trial court.").

The judgment of the district court is *Affirmed*.