Matthew **MAHONEY,**
Petitioner, Appellant,

v.

Ernest **VONDERGRITT, etc.,**
Respondent, Appellee.

No. 91–1039.

United States Court of Appeals,
First Circuit.

Heard May 6, 1991.

Decided July 24, 1991.

Stephen Hrones, with whom Murray A. Kohn and Hrones & Garrity, were on brief, Boston, Mass., for petitioner, appellant.

Pamela L. Hunt, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., were on brief, Boston, Mass., for respondent, appellee.

Before BREYER, Chief Judge,
COFFIN, Senior Circuit Judge, and
TORRUELLA, Circuit Judge.

COFFIN, Senior Circuit Judge.

Eleven days after a Massachusetts jury found Matthew Mahoney guilty of manslaughter, a juror sent the judge a letter suggesting that other jurors may not have confined their deliberations to the evidence presented at trial. The judge interviewed the juror privately and found beyond a reasonable doubt that no extraneous prejudicial information or improper actions occurred during the deliberations. After his conviction was affirmed on appeal, Mahoney filed a petition for a writ of habeas corpus claiming that he had been denied his Sixth Amendment right to counsel because the trial judge refused to permit his lawyer to be present at the juror interview. The district court summarily dismissed the petition. In this appeal, Mahoney claims that the court erred both in failing to grant a hearing on his petition and in failing to find a Sixth Amendment violation. We find no merit in either claim, and therefore affirm.

### Discussion

The juror's letter to the judge read in pertinent part as follows:

I also listened each day as you told us not to speak to anyone or read anything about this case. I took this as being the [l]aw ... but I'm not so sure if other jurors did.... We were told to confine our deliberations to the evidence.... I do not believe this happened. There are far too numerous things that happened to put down on paper.

After receiving the letter, the judge provided a copy to defense counsel and the prosecutor. Counsel for petitioner's co-defendant filed a motion asking the judge either to conduct an in camera interview of the juror or to permit counsel to interview her. The judge agreed to interview the juror but refused defendant's counsel's request to be present. A transcript of the interview was prepared and impounded and later reviewed by the Supreme Judicial Court in connection with defendant's appeal. The SJC described what it found as follows:

The transcript of that interview reveals a thorough and comprehensive inquiry. The juror was sworn. In response to careful questioning she indicated to the judge: (1) that some jurors discussed the merits of the case prior to the commencement of deliberations; (2) that the juror felt that she, and at least one other juror, had been "pressured" and "badger[ed]" into finding guilt because the jurors who concluded that the defendants had been proved guilty "were very stubborn" and "[t]hey weren't going to change their minds no matter what we had to show them[;]" and (3) that some jurors were concerned about "get[ting the defendants] off the street" so they would not commit other crimes.

*Commonwealth v. Mahoney*, 406 Mass. 843, 855, 550 N.E.2d 1380, 1387–88 (1990).

■ Three well-established principles of law govern this case. First, and foremost, is the longstanding rule that courts must "protect jurors and their verdicts from unwarranted intrusions," *Commonwealth v. Fidler*, 377 Mass. 192, 196, 385 N.E.2d 513, 516 (1979). *See Tanner v. United States*, 483 U.S. 107, 127, 107 S.Ct. 2739, 2751, 97 L.Ed.2d 90 (1987) ("long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry"); *Neron v. Tierney*, 841 F.2d 1197, 1205 (1st Cir.1988) ("courts generally 'should be hesitant[ ] to haul jurors in after they have reached a verdict ... to probe for potential instances of bias, misconduct, or extraneous influences' "); *United States v. Calbas*, 821 F.2d 887, 896 (2d Cir.1987) (" 'open-ended inquiry into the questions considered by the jury and into the deliberations of the jury will, if not kept under very close check, undermine the entire nature and integrity of our jury system' ") (quoting district court opinion). The reluctance to probe into jury decisionmaking should give way only in the face of "a showing sufficient to undergird genuine

doubts about impartiality," *Neron*, 841 F.2d at 1202. Moreover, inquiry into the motives of individual jurors and conduct during deliberations is never permissible; any investigation must focus solely on whether the jury was exposed to external influences and, from an objective perspective, whether such influence was likely to have affected the jury's verdict. *See* Fed. R.Evid. 606(b); *Calbas*, 821 F.2d at 897; *Fidler*, 377 Mass. at 201, 385 N.E.2d at 517.[1]

▉ The second relevant proposition of law is that trial judges have broad discretion in determining how to respond to allegations of extraneous influence on jurors. *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir.1990); *Calbas*, 821 F.2d at 896; *United States v. Parker*, 549 F.2d 998, 1000 (5th Cir.1977); *Fidler*, 377 Mass. at 203, 385 N.E.2d at 520. Third, and finally, in a habeas corpus proceeding, a state court's findings on whether, and how, extraneous matters affected jury deliberations "deserve[ ] a 'high measure of deference.'" *Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (quoting *Sumner v. Mata*, 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982)). *See also Neron*, 841 F.2d at 1199–1200; 28 U.S.C. § 2254(d).

▉ When viewed in light of these long-standing principles, petitioner's claim becomes transparently weak. Whether or not the vague allegations in the juror's letter were enough to require *any* response by the trial court,[2] it is evident that her unfocused, unsworn assertions demanded no more than the preliminary inquiry that the judge agreed to conduct. The judge was responsible for shielding the jury's deliberative process from unnecessary scrutiny, and his decision to conduct a private inquiry to determine if there was anything

justifying further intrusion fell well within his discretion. *See Calbas*, 821 F.2d at 896 ("The court wisely refrained from allowing the inquiry to become an adversarial evidentiary hearing, so as to minimize intrusion on the jury's deliberations."); *United States v. Beeler*, 648 F.2d 1103 (6th Cir. 1981) (per curiam) (upholding district court refusal to allow counsel to inspect post-trial letter from juror to judge); *Parker*, 549 F.2d at 1000 (court's discretion not abused "by an investigation in which only the judge interrogated those concerned").

Petitioner relies heavily on *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), in support of his claim. In *Remmer*, a juror told the judge during trial about a bribe he was offered in exchange for a verdict for the defendant. The judge immediately informed the prosecuting attorneys, but never told defense counsel, and ultimately determined without a hearing that the incident did not warrant a mistrial. The Supreme Court vacated the judgment and remanded for a full post-verdict hearing, holding that:

> The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing *with all interested parties permitted to participate*.

*Id.* at 229–230, 74 S.Ct. at 451–452 (emphasis added).

Although *Remmer* emphasizes the importance of fully exploring allegations of jury irregularities, with all parties involved, the case does not help petitioner here because of a crucial distinction in the underlying facts: unlike this case, *Remmer* dealt with a specific claim of juror bribery that

---

1. Rule 606(b) provides, in pertinent part:

   Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except

that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

2. The Supreme Judicial Court found that "nothing in the juror's letter ... necessitated an inquiry," 406 Mass. at 855, 550 N.E.2d at 1387.

obviously warranted thorough investigation.[3] As we have said before, "[w]e have no doubt that a court must satisfactorily probe *non-frivolous* charges of jury spoilage," *Neron*, 841 F.2d at 1201 (emphasis added). *See also United States v. Moten*, 582 F.2d 654, 664 (2d Cir.1978) ("When *reasonable grounds exist* to believe that the jury may have been exposed to such an influence, 'the entire picture should be explored.'") (emphasis added). Here, however, the judge was faced only with impressionistic concerns about improprieties, and a *Remmer*-like hearing would have been premature.

Petitioner's invocation of his Sixth Amendment right to counsel as a means of challenging the court's actions is also off the mark. It is no coincidence, we believe, that cases addressing the issue of post-verdict juror inquiry generally look to the Due Process Clause or the Sixth Amendment right to an impartial jury as the sources of the defendant's rights. *See, e.g., Tanner*, 483 U.S. at 127, 107 S.Ct. at 2751; *Smith v. Phillips*, 455 U.S. 209, 217–218, 102 S.Ct. 940, 946–947, 71 L.Ed.2d 78 (1982); *Neron*, 841 F.2d at 1200–1201, 1206. This is so because the relevant question in such cases is not the narrow one of whether counsel should, or should not, be present at a particular proceeding. The issue is the propriety of the procedure as a whole, including, but not limited to, the nature of counsel's participation. It strikes us as unproductive

and confusing to isolate the Sixth Amendment right to counsel in this context, and we therefore decline to do so. *See Rushen v. Spain*, 464 U.S. at 126–27, 104 S.Ct. at 459–60 (Stevens, J., concurring) (a defendant's right to a hearing on juror bias "would not stem from the right to be present or the right to counsel").[4] *Cf. Polizzi v. United States*, 550 F.2d 1133, 1138 (9th Cir.1976) (summarily rejecting Sixth Amendment right to counsel claim, holding that "[t]his right does not require that counsel be present or allowed to put questions when the judge is questioning the jurors").

We therefore reject petitioner's claim that the trial judge committed constitutional error in excluding counsel from the juror interview. We note, moreover, that the results of the interview plainly demonstrate the absence of any extraneous influence. As described by the Supreme Judicial Court, the juror's concerns centered entirely on the jury's internal processes rather than on any external influence, such as a bribe offered to a juror, a threat made against jurors' family members, or juror exposure to media reports.[5] Irregularities such as those described by the juror are simply part-and-parcel of the jury system, and provide neither a basis for inquiry nor grounds for undermining a verdict:

> Statements made by jurors in the jury room which reflect a poor opinion of a

3. *Remmer* also is distinguishable because it involved an impropriety brought to light *during* trial and thus did not implicate the concern for preserving the finality of verdicts.

4. *Rushen* involved an *ex parte* communication between a juror and the judge about the juror's acquaintance with an individual tangentially related to the case. Upon questioning, the juror assured the judge that her disposition of the case would not be affected, and the judge took no further action. The judge did not inform defense attorneys, who found out about the communication only after the case had ended. In his concurrence, Justice Stevens objected to the majority's assuming, without deciding, that the defendant's constitutional rights to presence and counsel were implicated. The majority made the assumption because those were the rights asserted by the defendant, and the government conceded that the undisclosed *ex parte* communication established constitutional

error. *See* 464 U.S. at 117–118 n. 2, 104 S.Ct. at 455–456 n. 2. In responding to Justice Stevens' criticism, the majority noted:

> Justice Stevens suggests that the only constitutional right implicated in this case is a possible due process right to a midtrial hearing on the subject of the juror's partiality.... Had the State raised the underlying constitutional right as an issue in the courts below and in the petition for certiorari, this approach might merit consideration.
> *Id.*

5. Petitioner does not dispute the SJC's depiction of the juror interview, and we therefore assume the accuracy of its account. Indeed, we, like the district court, are required to presume the correctness of not only the state court's findings of facts but also the conclusion reached by both the trial judge and the SJC that no extraneous influences affected the jurors. *See supra* pp. 1491–92.

defendant's character and a belief that the defendant may be likely to commit other criminal acts are undoubtedly frequent occurrences in jury deliberations. Indeed, the opinions they reflect are part of the human element implicit in the jury system.... So long as jurors form their opinions about a defendant free from exposure to prejudicial extraneous information or improper outside influence of a type absent here, jurors are at liberty to express their views free from the threat of post-verdict scrutiny by a federal court....

Mrs. Elliott's statements relative to the pressures put upon her to change her vote are similarly barred from consideration. Though Mrs. Elliott claims to have been subjected to strong pressure from other jurors, that fact constitutes neither extraneous information nor improper influence to which she could testify.

*Smith v. Brewer*, 444 F.Supp. 482, 487–88 (S.D.Iowa, C.D.), *aff'd on basis of district court opinion*, 577 F.2d 466, 467–68 (8th Cir.1978) (per curiam) (citing *United States v. Stoppelman*, 406 F.2d 127, 133 (1st Cir. 1969) ("The pressure ... was indigenous to the jury system.")).

 Mahoney also challenges the district court's decision to dismiss his petition summarily under Rule 4 of the Rules Governing Section 2254 cases.[6] Our discussion makes it clear that brevis disposition was appropriate here. The unfocused nature of the allegations in the letter and their lack of substance, as revealed by the SJC's unchallenged account of the juror interview, plainly demonstrated that petitioner suffered no constitutional harm.[7]

*Accordingly, we affirm the district court's summary dismissal of the petition for a writ of habeas corpus.*

---

**6.** Under Rule 4, a district judge may dismiss a habeas corpus petition summarily "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

**7.** It was somewhat inconsistent for the district court to dismiss the petition summarily under Rule 4 *and* to grant petitioner a certificate of probable cause, issuance of which generally requires a petitioner to show that questions "'debateable among jurists of reason'" are present-

ed, *see Moran v. Vose*, 816 F.2d 35, 36 (1st Cir.1987) (per curiam) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3394 n. 4, 77 L.Ed.2d 1090 (1983)). It may be that the court believed that the Sixth Amendment issue was worthy of debate, but nevertheless thought summary dismissal was appropriate because the facts clearly demonstrated that no extraneous influences tainted the jury's verdict. In any event, the decision to invoke Rule 4 was not erroneous.