# United States Court of Appeals
## For the First Circuit

_____

No. 99-1310

UNITED STATES,
Appellee,

v.

RICHARD HOULE, a/k/a Rocket
Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

_____

Before

Boudin and Lipez, Circuit Judges,

Casellas* District Judge.

_____

Lori H. Levinson, by appointment of the Court, with whom
Cain, Hibbard, Meyers & Cook, P.C. was on brief for appellant
Richard Houle.
Kirby A. Heller, Attorney, Department of Justice, with whom
Donald K. Stern, United States Attorney, and Andrew Levchuk,
Assistant U.S. Attorney, were on brief, for appellee.

_____

January 23, 2001

_____

_____
*        Of the District of Puerto Rico, sitting by designation.

**CASELLAS, District Judge.**  Following a jury trial, appellant Richard Houle[1] (hereinafter "Houle") was convicted of conspiracy to possess with intent to distribute and to distribute cocaine.  He was sentenced to 160 months of imprisonment, followed by 5 years of supervised release.  This appeal ensued.  We affirm.

## I. BACKGROUND

Houle was charged with conspiracy to posses with intent to distribute and to distribute cocaine, a violation of 18 U.S.C. § 846. Houle's conspiracy was part of a second superseding indictment also charging 12 other individuals, in various combinations, with the commission of several offenses, among them, conspiracy to commit and actually committing racketeering, in violation of 18 U.S.C. §§ 1962(b), (c), respectively.  All the offenses charged in the indictment stemmed from the defendants' involvement in the Connecticut and Massachusetts chapters of a national organization called the Diablos Motorcycle Club (hereinafter the "Diablos," or the "Club").

---

[1]Houle was tried and convicted with a number of other defendants.  Their appeals were heard at the same time, and were addressed in separate decisions. United States v. Baltas, No. 99-1574 (1st Cir. filed April 2, 1999); United States v. Lafreniere, No. 99-1318 (1st Cir. filed February 17, 1999).

The Diablos originated in San Bernardino, California in the 1960's, and from there expanded to other areas of the country. At the times relevant to this appeal, the Diablos's national presence extended to Connecticut, Florida, Indiana, Massachusetts, and New Hampshire. They were governed by a written constitution, which made membership conditional upon, among other things, being 21 years of age, Caucasian, and owning a firearm and a Harley-Davidson of a particular size. They also had a governing structure which included both national and chapter officers.

One of the prosecution's star witnesses was William Alvis (hereinafter "Alvis"). Before becoming a Diablo, Alvis had been involved in another motorcycle club, the Barbarians, where he became familiarized with the biker ethos. While associated with the Barbarians, Alvis was charged with the commission of various offenses unrelated to the instant indictment, and eventually began cooperating with government authorities. He infiltrated the Diablos at the FBI's behest, and gained the trust and confidence of the group. Once inside the organization, Alvis used his familiarity with biker culture to become a full-fledged member and vice-president of the Diablos Massachusetts chapter.

In January of 1996, several members of the Diablos, Alvis and Houle among them, traveled to California for a national meeting of the Club's officers. During their stay in California, Alvis, Houle and

other codefendants met with FBI Special Agent Mark Pecora, in his undercover role as "Tony," on an FBI yacht to discuss a potential (sham) cocaine deal. Tony explained that he was expecting a shipment of cocaine from Colombia, and that he needed security when the drugs arrived in Los Angeles, and for their transport to Massachusetts. Although the arrangements for the deal were not concluded, it was agreed that Houle, together with other codefendants, would provide security during the transaction.

A few days after this meeting, Houle accompanied one of his codefendants to Las Vegas to meet with Tony to arrange another (sham) drug deal, this one involving methamphetamine. While in Las Vegas, Tony set up another phony scenario where again he claimed to need security, this time to collect a gambling debt. Ultimately, Houle accompanied Tony on his collection endeavor, although he played no role in it.

The day the cocaine was supposed to arrive from Colombia, Tony, Houle and others met at a location close to a small airport in Los Angeles where the offload was supposed to occur. However, Houle became suspicious while awaiting the shipment, and because of his concerns, he decided not to participate further in the deal. Ultimately, the cocaine did not arrive in California on that occasion, but arrived in Massachusetts a few days later. Houle was not present when the shipment arrived, but he was later arrested and indicted for

his involvement in the conspiracy.

## II. DISCUSSION

### A. Joinder

Houle first contends that he was improperly joined in the indictment because he was not charged in the RICO counts.  We review misjoinder claims under Rule 8(b) de novo, see United States v. Chambers, 964 F.2d 1250(1st Cir. 1992), reversing "only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict,'" United States v. Lane, 474 U.S. 438, 449 (1986) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

We note at the outset that the facts underlying Houle's count of conviction, count 33, were also alleged in the second superseding indictment as predicate act 26 of the RICO conspiracy alleged in count 1.  Accordingly, both counts were properly joined in the indictment as "two or more acts or transactions connected together or constituting parts of a common scheme or plan."  Fed. R. Crim. P. 8(a); see also United States v. Zannino, 895 F.2d 1, 16 (1st Cir. 1990) ("offenses committed pursuant to the same (charged) racketeering enterprise may be joined in a single indictment").

Furthermore, this relatedness evidences "[a] rational basis in fact, sufficient to warrant joinder" under Rule 8(b).  Under this rule, "[t]wo or more defendants may be charged in the same indictment

. . . if they are alleged to have participated in the same act or transaction constituting an offense or offenses." Fed. R. Crim. P. 8(b). "[W]here, as here, a single RICO count 'embrace[s] all of the acts and transactions upon which the other . . . counts [are] based," joinder under Rule 8(b) is proper. See United States v. Boylan, 898 F.2d 230, 245 (1st Cir. 1990).

The fact that Houle was not charged as a RICO defendant is of no consequence. See Zannino, 895 F.2d at 16; United States v. Krout, 66 F.2d 1420, 1429 (5th Cir. 1995) ("If an indictment charges RICO violations, offenses committed as part of the pattern of racketeering activity are properly joined even if the defendant objecting is not named in the RICO count."); United States v. García, 848 F.2d 1324, 1333 (2d Cir. 1988) (joinder found proper even though not all the defendants were named in the RICO count), rev'd on other grounds Gómez v. United States, 490 U.S. 858 (1989). Therefore, we find that the district court correctly denied Houle's severance request.

### B. Severance

Houle unsuccessfully moved to sever his trial from those of his codefendants on various occasions both before and during trial. Here, he assigns error to the district court's refusal to sever, and argues that he was prejudiced by the district court's denial of his motions. Under Rule 14, a district court may order separate trials of counts or defendants "[i]f it appears that a defendant or the

government is prejudiced by a joinder . . . or by such joinder for trial together . . . ." Fed. R. Crim. P. 14. In making this determination, the district court enjoys wide latitude. See United States v. Rogers, 121 F.3d 12, 16 (1st Cir. 1997). We review a district court's refusal to sever for "manifest abuse of discretion," United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999), to determine whether joinder "deprived defendant of a fair trial, resulting in a miscarriage of justice," United States v. Tejeda, 974 F.2d 210, 219 (1st Cir. 1992) (citations and internal quotation marks omitted). For the reasons set forth below, we find that Houle has failed to shoulder this burden, and therefore, affirm the district court's ruling.

The gravamen of Houle's complaint is spillover prejudice. Specifically, he alleges the following: (1) that the evidentiary disparity between him and the other defendants created a "guilty by association" atmosphere; (2) that the jury heard evidence of violence committed by other defendants, which unfairly prejudiced him; and (3) that the district court's limiting instructions were inadequate to allow the jury to properly compartmentalize the evidence against him, because he was a minor participant and the only non-Rico defendant.

We begin our discussion by noting a principle that guides any severance analysis — that is, without a "serious risk that a joinder would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence," Zafiro v. United

States, 506 U.S. 534, 539 (1993), defendants charged in the same indictment should be tried together. The policies supporting this preference are that it helps to prevent inconsistent verdicts, and conserves judicial resources. United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993). As such, defendants are not routinely granted separate trials because they feel it might improve their odds of acquittal. Zafiro, 506 U.S. at 540. We will now address Houle's arguments.

Houle first argues that the disparity in evidence created a guilty by association atmosphere, which unfairly prejudiced him at trial. Although Houle correctly contends that portions of the evidence introduced at trial were not related to the charges levied against him, it is well settled in this Circuit that "[e]ven where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others," we should be "reluctant to second guess severance denials." O'Bryant, 998 F.2d at 26 (citing Boylan, 898 F.2d at 246). We find Houle's case fits within this framework, and therefore, will not second guess the district court's decision on this issue.

Next, Houle contends that the jury heard testimony concerning violent acts of co-defendants, which unfairly prejudiced him. However, we agree with the government that testimony introduced against Houle is no less violent than the evidence he complains unfairly prejudiced him.

At trial, the government introduced evidence concerning Houle's conduct during the drug deal, where he allegedly said "put one in their lookers," if anyone "looks at you cross-eyed." Even without this evidence of Houle's own violent propensities, we rejected a similar claim of spillover prejudice based on a co-defendant's violent acts in DeLeon. 187 F.3d at 63 (holding that repeated inquiries about third-party fear based on co-defendant's violent nature did not warrant severance).

Finally, Houle claims that the district court's limiting instructions were inadequate because no jury could properly compartmentalize the evidence against him. He maintains that because his role in the conspiracy was so minor, the jury should not have been forced to assess his innocence or guilt alongside the other defendants. The difficulty in this "argument is the case law holding to the contrary." DeLeon, 187 F.3d at 63 (citing United States v. Rawwad, 807 F.3d 294, 295 (1st Cir. 1986).

We begin by noting that despite Houle's assertion to the contrary, the district court took adequate measures to safeguard against the possibility of spillover prejudice by repeatedly instructing the jury to consider the evidence separately as to each defendant. In fact, the district court instructed the jury at the outset of the trial, several times throughout the trial, and during the final charge that it must consider the evidence against each defendant

individually.  Moreover, the court emphasized that the jury must not apply the evidence relevant to the RICO counts against Houle.  In sum, we find the court's cautionary measures proper under prior case law of this circuit.  See DeLeon, 187 F.3d at 64; Rogers, 121 F.3d at 16; Boylan, 898 F.2d at 246, United States v. Cresta, 825 F.2d 538, 555 (1st Cir. 1987).

With regard to the jury's ability to segregate the evidence and understand the judge's instructions, the verdict itself is often quite telling.  In this case, the jury acquitted co-defendant Lafreniere of the RICO offenses, and co-defendant Moore of all charges. This discriminating verdict shows that the jury was able to compartmentalize evidence and apply it to each defendant, and gives us "no basis to suppose that the jurors disregarded the trial judge's admonitions and departed on a frolic of their own." United States v. Pierro, 32 F.3d 611, 616 (1st Cir. 1994); see also DeLeon, 187 F.3d at 64; Boylan, 898 F.2d at 246; Cresta, 825 F.2d at 555; United States v. Tashijan, 600 F.2d 829, 834 (1st Cir. 1981).

In sum, we find that the level of prejudice suffered by Houle to be no greater than the type or degree customarily suffered by defendants in multiple defendant and multiple charge cases; and "[a]t bottom, this is simply a disagreement with the district court's exercise of its considerable discretion."  DeLeon, 187 F.3d at 246.

## C. Evidentiary Issues

-10-

Houle believes the district court erroneously admitted evidence concerning the "protection" he provided for Tony during a trip to Las Vegas. As noted above, Houle had gone to Las Vegas to set up another drug deal, and while there, Tony asked him to provide security while he collected a gambling debt. Houle agreed to accompany Tony on his collection endeavor, although he played no role in it.

At trial, the government successfully argued that Houle put the element of intent at issue by claiming that he was entrapped into providing security for the offload of a cocaine shipment in California.[2] With Houle's intent at issue, the government argued, and the district court agreed, that there was a sufficient similarity between Houle's acting as a bodyguard in Las Vegas, and his participation as security for the cocaine shipment in California, to admit the evidence under the "intent" exception to Rule 404(b). Houle contends that evidence of his participation in a phony debt collection scheme should not have been admitted under Rule 404(b) because it was not relevant to any material issue at his trial for conspiracy to possess with intent to distribute cocaine.

---

[2]Houle placed his intent at issue in his opening statement by claiming that the cocaine deal was "written, produced, and directed by the United States Government . . . [a]nd if it wasn't for the United States Government making up this so-called crime, Rick Houle would not be sitting there today."

Moreover, "[i]n every conspiracy case . . . a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government." United States v. Zeuli, 725 F.2d 813, 816 (1st Cir. 1984).

Rule 404(b) provides that evidence of a defendant's prior bad acts may not be admitted to prove his criminal character or propensity to commit similar crimes.[3] We review the district court's decision whether to admit evidence pursuant to Rule 404(b) for an abuse of discretion, and will reverse the district court's balancing under Rule 403 only in exceptional circumstances. United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996). Further, the court will treat any error in admitting 404(b) evidence as harmless if it determines that the disputed evidence did not contribute to the verdict. United States v. Levy-Cordero, 156 F.3d 244 (1st Cir. 1998).

In reviewing such cases, we utilize a two-pronged test. First, the evidence must be "specially probative of an issue in the case—such as intent or knowledge—without including bad character or propensity as a necessary link in the inferential chain." United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996). The probative value of the evidence "must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime

---

[3] Rule 404(b) provides in pertinent part:
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake ot accident . . . .

Fed. R. Evid. 404(b).

charged." Id. (quoting United States v. Fields, 871 F.2d 188, 197 (1st Cir. 1989)).  Second, if the "proffered evidence has 'special relevance,' it is nonetheless inadmissible if its probative value is 'substantially outweighed by the danger of,' *inter alia*, 'unfair prejudice, confusion of the issues, or misleading the jury'." Frankhauser, 80 F.3d at 648; Fed. R. Evid. 403.

Immediately following the testimony about the security detail in Las Vegas, the district court instructed the jury on the permissible and impermissible uses of the evidence.  The court instructed the jury that they could not use the evidence  to infer propensity, but that they could use it in determining Houle's intent in connection with the charged crime.  The court then explained its rationale for the ruling outside the presence of the jury by pointing out that the evidence was relevant to intent and the absence of mistake, and that the incident took place soon after Houle agreed to provide similar security in connection with the cocaine deal.  The court discounted the fact that Houle agreed to provide security for a drug deal in one instance, and for the collection of a gambling debt in the other instance by finding that  Houle's intent to provide physical protection was at issue in the cocaine conspiracy.  As such, the court concluded: (1) that the Las Vegas incident was relevant to Houle's intent to provide protection, and (2) that the probative value of such evidence outweighed any unfair prejudice.

We begin our discussion by noting that other acts that bear on a defendant's predisposition to commit a crime are highly probative when, like here, the defendant claims entrapment. See United States v. Mazza, 792 F.2d 1210, 1223 (1st Cir. 1986) (evidence of a prior cocaine purchase was material in light of the defendant's entrapment defense); see also United States v. Russell, 411 U.S. 423, 429 (1973) ("if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue.") (quoting Sorrells v. United States, 287 U.S. 435, 451 (1932)).

Here, Houle claims that he was not predisposed to traffic in drugs, and only involved himself in the cocaine conspiracy at the behest of the government. However, the evidence demonstrates that only four days after agreeing to provide security for the cocaine shipment, Houle volunteered to provide security for the collection of the gambling debt. This evidence therefore, is relevant as to the ultimate issue in the case; whether Houle intended to participate in the cocaine conspiracy or whether the government ensnared him in its plot. We conclude that Houle's participation and involvement in the gambling debt collection — serving an identical role with the same undercover agent, only four days apart — "had sufficient similar elements with his participation and involvement in the conspiracy charged to make it relevant and highly probative of his criminal knowledge and intent."

United States v. Crocker, 788 F.2d 802, 804 (1st Cir. 1986) (citing United States v. Indelicato, 611 F.2d 376, 386-87 (1st Cir. 1979)). Finally, if we accept Houle's argument, we would allow him to allege that the government had induced him to commit the crime, but preclude the government from replying by "showing that [Houle's] criminal conduct was due to his own readiness and not to the persuasion of the government." Sherman v. United States, 356 U.S. 369, 376-77 (1958).

Since the evidence relating to the Las Vegas trip was introduced for a legitimate purpose, we find no error under Fed. R. Evid. 404(b). Moreover, pursuant to Fed. R. Evid. 403, the district court properly weighed the probative value of the evidence against its potential for unfair prejudice and attempted to minimize any prejudice by providing a limiting instruction. Based on this analysis, we find that the district court did not abuse its discretion by admitting the evidence complained of by Houle.

### D. Sentencing

After oral argument was held, a letter was transmitted to the court under Fed. R. App. P. 28(j) calling our attention to the recent Supreme Court decision in Apprendi v. New Jersey, - U.S.- (2000), 120 S.Ct. 2348 (2000). We granted both Houle and the government time to submit supplementary memoranda addressing the possible relevance of Apprendi, and, assuming that Apprendi applies, addressing the issue of

-15-

prejudice.  Such memoranda having been filed, the matter is properly submitted for disposition.

The Supreme Court in <u>Apprendi</u> held as a matter of constitutional law that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  120 S. Ct. at 2362-63.  Invoking this rule, Houle seeks to have his sentence vacated because the amount of the heroin attributed to him was never submitted to the jury and proved beyond a reasonable doubt.  Because Houle did not raise this issue below, we review for plain error.  <u>See</u> <u>United States</u> v. <u>Mojica-Báez</u>, 229 F.3d 292, 307 (1st Cir. 2000).

Houle makes two arguments on appeal: first, that the district court imposed a sentence above the lowest statutory maximum provided by  21 U.S.C. § 841(b)(1)(B); and second, that the district court erroneously imposed a sentence in excess of the lowest statutory mandatory minimum.

Houle was convicted of conspiracy to possess with intention to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846.  The amount of cocaine attributed to him was not found by the jury beyond a reasonable doubt.  Instead, it was determined by the district court under a preponderance of

-16-

evidence standard at the sentencing hearing. Under this standard, the district court determined that the transaction involved from 15 to 50 kilograms of cocaine. Based on its findings the court sentenced Houle to a term of 160 months of imprisonment under 841(b)(1)(A). The statutory framework involved in this case begins with Section 846, which provides that the penalty for an attempt or conspiracy to commit a drug trafficking offense shall be the same as the penalty for the offense that was the object of the attempt or conspiracy. 21 U.S.C. § 846. The underlying offense is set out in section 841(a)(1), which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Section 841(b)(1)(A)-(D), in turn, establishes the penalties applicable to a violation of section 841(a)(1). Section 841(b)(1)(C), the statutory catchall authorizes a term of imprisonment for a schedule I or II narcotic, such as cocaine, without reference to drug quantity, of "not more than 20 years." 21 U.S.C. § 841(b)(1)(C).

Houle first argues that the district court imposed a sentence above the lowest statutory maximum provided in Section 841. In support of his argument he relies on the Ninth Circuit case of United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000).

-17-

In that case, the jury made no finding as to the specific amount of marijuana that the defendant possessed with the intent to distribute. Similarly, the judge determined the quantity of drugs using the preponderance of evidence standard. The error occurred when the district court's finding imposed a sentence that went beyond the five year maximum for an undetermined amount of marijuana. Nordby was sentenced to the ten years under 21 U.S.C. § 841(b)(1)(A)(vii). However, 21 U.S.C. § 841(b)(1)(D) states that "in the case of less than 50 kilograms of marijuana, except in the case of 50 or more marijuana plants regardless of weight . . . [the defendant shall] be sentenced to a term of imprisonment of not more than 5 years." Id. at 1056-57. Therefore, the Ninth Circuit found the ten year sentence exceeded the maximum allowed for a marijuana conviction under 21 U.S.C. § 841 (b)(1)(D).

Based on the Ninth Circuit's holding, Houle argues that his sentence must be vacated because it exceeds the statutory maximum provided in 21 U.S.C. § 841(b)(1)(A). However, his reliance is misplaced. First, unlike Nordby, Houle was convicted of a cocaine offense and not a marijuana offense. Therefore, the five year statutory maximum provision of Section 841(b)(1)(D), that was exceeded in Nordby, is inapplicable to the case at bar. As such, the correct "statutory maximum" for

-18-

a schedule II substance, like cocaine, is found in the catchall provision of Section 841(b)(1)(C). This section states that "in the case of a controlled substance in schedule I or II . . . except as provided in subparagraphs (A),(B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C). Therefore, since the district court sentenced Houle to a term of 15 years, well below the maximum of twenty years, his reliance on Nordby is incorrect.

Houle also argues that the district court erroneously imposed a sentence in excess of the lowest statutory mandatory minimum, and invites the court to read Apprendi more broadly to include mandatory minimums. Under Houle's proposed reading, any factor that would increase the mandatory minimum penalty associated with an offense, albeit within the statutory maximum, would also have to be submitted to the jury and proved beyond a reasonable doubt.

Houle's argument is misplaced for two reasons: first, Houle was sentenced by the district court to a term of 160 months. The court determined the length of his sentence based on the sentencing guidelines, and not by referring to the minimum sentence of 120 months provided by the statute. Under these circumstances the result in our case would not be any

-19-

different even if the Supreme Court were to overrule McMillan v. Pennsylvania, 477 U.S. 79 (1965), which authorizes legislatures to increase minimum penalties based upon non-jury factual determinations, as long as the penalty imposed does not exceed the maximum range.

Second, even if the statutory minimum played a role in Houle's sentence, his main obstacle would be Apprendi itself. This is true because the majority in Apprendi declined to overrule their previous decision in McMillan. 120 S. Ct. at 2361 n.13. Moreover, as the Eighth Circuit explained in Aguayo-Delgado:

> If the non-jury factual determination only narrows the sentencing judge's discretion within the range already authorized by the offense of conviction . . ., then the governing constitutional standard is provided by McMillan. As we have said, McMillan allows the legislature to raise the minimum penalty associated with a crime based on non-jury factual findings, as long as the penalty is within the range specified for the crime for which the defendant was convicted by the jury. Apprendi expressly states that McMillan is still good law . . . .

220 F.3d 926, 933-34 (5th Cir. 2000); see also United States v. Meshack, 225 F.3d 556, 576-77 (5th Cir. 2000) (approving of a more limited reading of Apprendi). We believe that this is the proper construction under existing precedent and therefore, refuse to apply Apprendi in cases concerning mandatory minimums.

Our holding today is that no Apprendi violation occurs

-20-

when the district court sentences the defendant within the statutory maximum, regardless that drug quantity was never determined by the jury beyond a reasonable doubt. This holding is consistent with our decision in <u>United States v. Lafreniere</u>, 99-1318 (1st Cir. filed Feb. 17, 1999)[4], and those of our sister circuits which have had the opportunity to address challenges similar to the ones presented by Houle. <u>See, e.g.</u>, <u>Meshack</u>, 225 F.3d at 576-77; <u>Aguayo-Delgado</u>, 220 F.3d at 926; <u>United States v. Gerrow</u>, 2000 WL 1675594, at *2 (11th Cir. Nov. 8, 2000); <u>United States</u> v. <u>Angle</u>, 230 F.3d 113, 123 (4th Cir. 2000); <u>United States v. Chavez</u>, 230 F.3d 1089, 1091 (8th Cir. 2000).

### III. CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence.

---

[4]Lafreniere was Houle's co-defendant. He was convicted of a similar charge, only involving a heroin (and not cocaine) conspiracy. On appeal, he made the same <u>Apprendi</u> arguments.