William RESTUCCI, Petitioner,

v.

Luis SPENCER, Respondent.

No. CIV.A.01–11693–WGY.

United States District Court,
D. Massachusetts.

March 3, 2003.

William Restucci, MCI Norfolk, Norfolk, MA, pro se.

Annette C. Benedetto, Attorney General's Office, Boston, MA, for Luis Spencer.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

Petitioner William Restucci ("Restucci") has brought a pro se petition for habeas relief pursuant to 28 U.S.C. § 2254.  Con-

struing his petition liberally, as the Court must, Restucci's claims are threefold: 1) he argues that his guilty plea to manslaughter was not knowing, intelligent, and voluntary; 2) he submits that his lawyer's performance constituted ineffective assistance of counsel at the plea phase; and 3) he argues that the state court abused its discretion when it did not grant his motion to sever the co-defendant (who also pled guilty) from his trial.

## I. BACKGROUND

On November 14, 1995, Restucci pled guilty to voluntary manslaughter before the Massachusetts Superior Court sitting in and for the County of Suffolk. He was sentenced to not less than fifteen nor more than twenty years in custody. An exposition of the facts of the case underlying this plea, how the plea was taken, the procedural history of Restucci's appeals since he was sentenced, and the purported basis of his claims for habeas relief follows.

### A. The Crime

The grand jury testimony excerpts, police reports, and the remarks of the prosecutor as to what the Commonwealth was prepared to prove (made at Restucci's plea colloquy), paint a picture of a man savagely beaten and kicked to death by three assailants.

On July 21, 1994, George Singleton ("Singleton"), the victim, and his friend, Mark Pettengill, ("Pettengill"), went to La-Bella's, a bar in the North End section of Boston. Resp't List of Exhibits [Docket No. 32], Ex. 2, Tr. of Plea Colloquy at 9. At the bar, the bartender informed one of the patrons, Julio Nason ("Nason"), that he would not be served more alcohol because of his boisterous behavior. *Id.*, Ex. 3, Grand Jury Proceedings at 21.

Angry that he had been refused service, Nason approached Pettengill's and Single-ton's table as he was leaving the bar, and his friends, Restucci and Eitan Grinspon ("Grinspon"), followed him. *Id.*, Ex. 2 at 9. At this point, Nason, uninvited, took Pettengill's and Singleton's pitcher of beer, poured a glass out of it, and drank it. *Id.* Singleton, while offended, apparently remained silent. *Id.* Nason then left the bar, accompanied by Restucci and Grinspon. *Id.*

The manager of LaBella, Michael Goss ("Goss"), and Pettengill counseled Singleton to forget about the affair, saying it was not worth a fight. *Id.*, Ex. 3 at 22. Pettengill then went to the restroom. *Id.*, Ex. 2 at 9. After his friend was inside the restroom, Singleton apparently decided to go outside and confront Nason. *Id.*, Ex. 2 at 10.

A security guard, Michael Riley ("Riley"), was changing a flat tire across the street from the bar. *Id.*, Ex. 3 at 39. Riley noticed Nason, Restucci, and Grinspon immediately because one was boisterous as they left the bar, and one conversed with a man who was passing by on a bicycle. *Id.*, Ex. 2 at 10. Then Riley saw Singleton come out of the bar. *Id.*, Ex. 2 at 11.

According to Riley, Singleton approached Nason and accused him of disrespect. *Id.*, Ex. 3 at 41. At this point, Nason, Restucci, and Grinspon attacked Singleton. *Id.* According to Riley, Singleton attempted to retreat and stated he did not want any trouble, but the attackers persisted. *Id.* at 42. Riley testified that, despite Singleton's protestations, the three men repeatedly punched and kicked Singleton about the head and body. *Id.*

At some point during the attack, Pettengill emerged from the bar and attempted to assist his friend. *Id.*, Ex. 2 at 11. As Pettengill approached, Grinspon brandished a knife, threatened Pettengill, and

36

ordered him to back away. *Id.* Pettengill retreated to the bar and the police were summoned. *Id.*

Arthur McKenzie ("McKenzie"), another security guard who had been called to assist Riley with his vehicle, arrived on the scene to help change the flat tire. *Id.*, Ex. 3 at 43. Riley and McKenzie then crossed the street to help. *Id.* Upon seeing McKenzie, clad in a security guard uniform, Nason and Restucci fled. *Id.*, Ex. 2 at 12. Grinspon remained and told McKenzie and Riley that Singleton had initiated the altercation. *Id.*, Ex. 3 at 44.

The police arrived on the scene shortly thereafter and quickly apprehended Nason and Restucci. *Id.*, Ex. 2 at 12. Riley, McKenzie, and Pettengill positively identified Restucci as an assailant in the attack. *Id.* at 12–13. Paramedics were unable to revive Singleton and he was pronounced dead. *Id.* at 13.

## B. The Trial Court Proceedings and Petitioner's Guilty Plea

Restucci and Nason were jointly charged with first degree murder as coventurers and were set to be tried together. Restucci moved on the eve of trial to sever his case from Nason's, but the motion was denied. *Id.*, Ex. 1, Docket Sheets at 4. On November 14, 1995, after a jury had been empaneled and a motion to suppress evidence had been denied, Restucci and Nason pled guilty to manslaughter in the first degree before Judge Robert Banks, and Restucci was sentenced. *Id.*, Ex. 2 at 24.

Before considering their offers to plead guilty, Judge Banks asked both men their names, addresses, places of birth, and how far each had gone in school. *Id.*, Ex. 2 at 3–4. Restucci stated that he had attended school up to the tenth grade. *Id.*, Ex. 2 at 4. Restucci responded affirmatively when asked whether he could read, write, and

understand English, and he stated that he was not suffering from any mental defect or under the influence of alcohol or drugs. *Id.* Restucci acknowledged that he was charged with murder, that the government alleged that he had beaten Singleton with intent to murder him, that, by doing so, he did kill and murder him, and that he was "offering to plead guilty to so much of that offense that encompasse[d] manslaughter." *Id.*, Ex. 2 at 4–5. Judge Banks informed Restucci of his rights to a trial by jury or judge and told him that, by pleading guilty, he was waiving these rights, as well as the right to confront his accusers and the witnesses against him. *Id.*, Ex. 2 at 6. The judge further advised Restucci that he was waiving his right against self-incrimination and the right to appeal adverse rulings on suppression motions. *Id.*, Ex. 2 at 7. Restucci responded that he understood each of the judge's warnings. *Id.*, Ex. 2 at 8. Restucci was asked if he wanted to plead guilty, and he responded "yes." *Id.* When the clerk read the indictment and asked him his plea, Restucci replied, "Guilty." *Id.*

Restucci was then asked by the court to listen to the government regarding the facts and to "determine whether or not [he] agree[d] with what [the Assistant District Attorney ("A.D.A.")] ha[d] to say and whether or not [he admitted his] guilt . . . ." *Id.* at 8–9. After the government's allocution, Judge Banks asked Restucci if he had heard what the A.D.A. had said. *Id.*, Ex. 2 at 14. Restucci responded affirmatively, and agreed that what had been stated to the court was true. *Id.* He acknowledged his participation in the beating of Singleton and admitted he was guilty of manslaughter. *Id.* At this point the trial judge inquired as to the voluntariness of Restucci's plea:

Q (Judge Banks): Are you pleading guilty freely, willingly and voluntarily?

A: (Restucci) Yes.

Q: Has anyone forced you to plead guilty?

A: No.

Q: Have any threats been made which required you to plead guilty?

A: No.

Q: Have you been coerced in any way into pleading guilty?

A: No.

Q: Any promises been made which induced you to plead guilty?

A: No.

Q: Are you pleading guilty because you are guilty and for no other reason?

A: Yes.

Q: Have you had sufficient time to fully and completely discuss this case with your attorney and have you had explained to you all of the elements of the offense that you're pleading guilty to and the requirement of the Commonwealth to prove its case beyond reasonable doubt and all of the alternatives to pleading that are available? Have you had that opportunity and have your attorneys so informed you?

A: Yes.

Q: Are you satisfied with the representation of your attorneys?

A: Yes.

Q: Do you think they have acted in your best interest?

A: Yes.

Q: Are you a citizen of the United States, Mr. Restucci?

A: Yes.

Q: You understand that if you are not citizens you subject yourself to deportation and being prevented from ever entering this country again by virtue of this plea of guilty.

Do you have any questions that you wish to ask me regarding this plea?

A: No.

Q: Do you wish me to accept your plea, Mr. Restucci?

A: Yes.

*Id.*, Ex. 2 at 15–17. The trial judge then accepted the plea and found that it was offered voluntarily, knowingly, and intelligently. *Id.*, Ex. 2 at 17. Restucci later signed a waiver of his rights. *Id.*, Ex. 2 at 23.

Restucci's counsel, Oliver Mitchell ("Mitchell"), then spoke on Restucci's behalf and pointed out unfortunate circumstances in his life, including abandonment by his mother at a young age. *Id.*, Ex. 2 at 18–19. Mitchell asked the court for leniency. *Id.* Restucci did not speak on his own behalf. After reviewing Restucci's probation record and acknowledging that Restucci had never materially run afoul of the law, Judge Banks sentenced the petitioner to not less than fifteen years, nor more than twenty years in prison, as defense counsel and the government had agreed. *Id.*, Ex. 2 at 23.

## C. Restucci's Claims

Restucci claims that he was coerced into pleading guilty by Mitchell, by Nason's counsel, Tom Horgan ("Horgan"), and by members of Restucci's own family, making his plea involuntary. As support for these claims, Restucci has submitted memoranda from Mitchell's office, in which a paralegal summarizes meetings between Restucci, his counsel, and Nason's lawyer, which appear to bolster his claim that he was insisting on going to trial. *See Id.*, Ex. 11, Application for Further Appellate Review ("ALOFAR"), Catherine Dumais Mem. (November 16, 1995) and Patricia Vickers Mem. (November 8, 1995). Restucci has also included affidavits from his father, his ex-wife, and his former mother-in-law, in which they all admit imploring him to

plead guilty, because Mitchell had convinced them Restucci would lose at trial. *Id.,* Ex. 8, Ex. B, Aff. of William Restucci (August 23, 1999); Ex. D, Aff. of Annette Galeno (June 29, 1999); Ex. E, Aff. of Lucille Galeno (June 29, 1999); Ex. F, Aff. of Anthony Restucci (June 5, 1999).

Restucci and Mitchell met before trial and Mitchell told him that he should plead guilty because he faced certain life imprisonment if found guilty of first degree murder, but that he would likely spend only 12 years in jail if he pled guilty to manslaughter. *See Id.,* Ex. 11, Catherine Dumais Mem. Restucci also alleges an incident in which Mitchell and Horgan strongly admonished him to take the manslaughter plea. *Id.,* Ex. 8, Restucci Aff. ¶ 11. Nason also asked him to do the same. *Id.,* Ex. 11, Catherine Dumais Mem. Restucci's ex-wife, Annette Galeno, claims that Mitchell advised her to meet with Restucci in jail to convince him to plead guilty, which she did. *Id.,* Ex. 8, Ex. D, Annette Galeno Aff. at ¶ 3. Restucci states that the actions of Mitchell and his family created a great deal of emotional stress for him and greatly affected his decision to plead guilty. *Id.,* Ex. B, Restucci Aff. at ¶ 9, 16. Restucci also avers that Nason's family, believing that if Restucci did not plead guilty things would go worse for Nason and that *his* plea would not be accepted, forcefully urged Restucci to take the plea just before he stood in front of Judge Banks on November 14, 1995. *Id.* at ¶ 12. All of these factors, Restucci submits, indicate that his plea was involuntary.

Restucci also claims that Mitchell's advising him to plead guilty to manslaughter constituted ineffective assistance of counsel. Restucci submits that the affidavits from himself, his father, his ex-wife and his former mother-in-law show that Mitch-

ell was indifferent to Restucci and his case.[1] Throughout the affidavits, Restucci and his family members state that Mitchell repeatedly told them the case was hopeless, that witness inconsistencies and other possible exculpatory evidence were irrelevant, and that Restucci had to plead guilty.

Restucci steadfastly maintains in all of his post-plea submissions that he was not involved in the attack on Singleton and that he was attempting to break up the fight. In page after page, Restucci points out "facts" in the record that he believes help prove his innocence.

Restucci argues that he had a good case for trial because the three eyewitnesses—Pettengill, Riley, and McKenzie—were mistaken in identifying him as one of the men kicking the victim. He also contends that Nason stated that Restucci was not involved in the beating when they were arrested, which is reflected in a police report. *See Id.,* Ex. 8, Ex. C at ¶ 6 ("Nason stated that his friend (Restucci) had nothing to do with the incident" and "that they were only protecting themselves"). Furthermore, Restucci argues that had he gone to trial, Nason would have testified that Restucci was not involved in the beating and was trying to break up the altercation.

## D. Subsequent Procedural History

Restucci appealed his sentence on November 25, 1995 and his conviction was affirmed on July 28, 1997. *Id.,* Ex. 1 at 6. On December 22, 1995, Restucci filed a motion to revise or revoke his sentence, and the motion was denied without a hearing. *Id.* at 5. After filing a *pro se* motion to withdraw his guilty plea and appealing the denial of this motion, Restucci filed a *pro se* motion for release from unlawful

---

1. For example, Restucci alleges that Mitchell made remarks to the effect that he was only being paid $50 an hour when he usually made $250 an hour. *Id.,* Ex. 8, Restucci Aff. ¶ 15.

restraint on March 3, 1997, which was denied by Judge Volterra without a hearing on July 22, 1997. *Id.*, Ex. 1 at 6. Restucci filed an amended motion for release from unlawful restraint and a petition for a writ of habeas corpus *ad subjiciendum* on May 21, 1997, both of which were denied without a hearing. *Id.* In his motion and amended motion for release from unlawful restraint, Restucci argued: 1) that his guilty plea was not knowing, intelligent, and voluntary because he was coerced into pleading guilty by his counsel, family and members of Nason's family; and 2) that Mitchell provided ineffective assistance of counsel. *Id.*, Ex. 3.

On August 20, 1997, the petitioner filed a *pro se* notice of appeal from the denial of the amended motion for release from unlawful restraint and a *pro se* notice of appeal from the denial of his motion for release from unlawful restraint. *Id.*, Ex. 1 at 6. The Massachusetts Appeals Court affirmed the lower court's decisions denying Restucci's various motions, stating:

> [T]here was no abuse of discretion or other error in the Superior Court's denial of the defendant's various motions for the reasons set out in the Commonwealth's brief. The orders denying the defendant's motion for release from unlawful restraint, his amended motion for release from unlawful restraint and his petition for writ of habeas corpus are affirmed.

*Id.*, Ex. 5 (*Commonwealth v. Restucci*, No. 97–P–1840, Mem. and Order Pursuant to Rule 1:28). Restucci's ALOFAR was denied on March 26, 1999. *Commonwealth v. Restucci*, 429 Mass. 1104, 709 N.E.2d 1121 (1999).

On September 7, 1999, Restucci filed his third motion to withdraw his guilty plea. Resp't List of Exhibits, Ex. 1 at 7. The lower court declined to act and Restucci appealed. *Id.* Briefs were filed by the parties, and on May 31, 2001, the Court of Appeals affirmed the order denying the motion for a new trial. *Commonwealth v. Restucci*, 51 Mass.App.Ct. 1111, 748 N.E.2d 1056 (2001). Restucci's ALOFAR was subsequently denied. *Commonwealth v. Restucci*, 435 Mass. 1104, 758 N.E.2d 628 (2001).

Restucci filed his first petition for federal habeas corpus review before this Court on September 25, 1996. The Court summarily dismissed the petition pursuant to Rule 4 of the Rules governing § 2254 cases on November 6, 1996. His second petition was denied for the same reason and Restucci filed an appeal from this denial, which was dismissed for lack of prosecution. On March 15, 2000, Restucci filed his third petition for habeas relief before this court. The respondent argued in its reply that the petition should be dismissed for a failure to exhaust state remedies. On October 2, 2000, Restucci moved to stay the proceedings or decide the case on the merits. On October 5, 2000, this Court administratively closed the case, stating that the case could be reopened at the request of either party upon a showing that the Courts of the Commonwealth had exhausted review of the petitioner's claims. Restucci filed additional motions and appealed to the First Circuit, but the motions and appeal were denied. On September 28, 2001, Restucci filed his fourth *pro se* petition for writ of habeas corpus,[2] which is presently before the Court.

After Restucci amended his claim to conform with procedural rules, the Respondent asked the Court to order Restucci to file a More Definite Statement of the grounds on which his habeas claim was

---

**2.** Restucci initially framed his petition as a    civil rights claim.

based, because his *pro se* submissions were unclear. The Court so ordered on June 11, 2002 [Docket No. 26] and Restucci complied. Pet'r More Definite Statement [Docket No. 29]. In his More Definite Statement, Restucci reiterated his claims of an involuntary guilty plea and ineffective assistance of counsel. Additionally, however, Restucci claimed that Judge Banks had abused his discretion at trial in denying Restucci's motion to sever his trial from Nason's. Restucci had not previously raised the issue in the state courts.

## II. DISCUSSION

### A. Exhaustion

Restucci's habeas petition may present a mixed petition of exhausted and unexhausted claims. As noted above, Restucci's claims are (1) that his guilty plea was involuntary; (2) that his trial counsel provided ineffective assistance; and (3) that the state court erred in denying his motion to sever his trial from Nason's trial. Restucci, however, has arguably not exhausted this third claim in the state courts. The parties apparently agree that the issue respecting the denial of the motion to sever was not explicitly presented to the Appeals Court and the Supreme Judicial Court. Resp't Mem. Supp. Mot. to Dismiss [Docket No. 31] at 12–13; Pet'r Opp. to Mot. to Dismiss [Docket No. 33] at 2–3. Restucci argues, however, that his appellate brief and ALOFAR can be construed as raising this issue. Pet'r Opp. to Mot. to Dismiss at 2. He points to passages in his appellate brief and ALOFAR wherein, within the context of analyzing the voluntariness of his plea and the ineffective

assistance of counsel, he made references—somewhat obliquely—to the fact that his trial was not severed from Nason's. *See, e.g.,* Resp't List of Exhibits, Ex. 3 at 2, 5 (noting that the trial judge did not inquire properly into whether "the plea agreement was a voluntary act on the defendants part *free from coercive influence resulting from multiple representation or the proposed bargin* [sic] *itself* ...", that "[t]he counsels also never informed the defendant of the risk and dangers of joint representation ...", and that the "joint defense can not [sic] be viewed as harmless ..."); *Id.,* Ex. 6 at 3 (noting in the context of the alleged involuntary plea that the record reflected a "denial of motion to sever").

The First Circuit has held that "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the exhaustion trick." *Martens v. Shannon,* 836 F.2d 715, 717 (1st Cir.1988). The question here is close, especially given Restucci's *pro se* status.[3]

■ Whether the claim is exhausted is irrelevant, however, because the Court may reach the merits of an unexhausted claim to deny the petition. Even assuming that Restucci did fail to exhaust his claims, section 2254 and the Antiterrorism and Effective Death Penalty Act ("AEDPA") authorize this Court to deny the claims on

---

**3.** As a *pro se* petitioner, Restucci is entitled to some latitude in the interpretation of his claims. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (noting that courts should read *pro se* pleadings less strictly than pleadings

drafted by lawyers); *Prou v. United States,* 199 F.3d 37, 42 (1st Cir.1999) (applying a more tolerant standard of particularity to a *pro se* motion for 28 U.S.C. § 2255 habeas relief).

the merits. A petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (2000). Accordingly, this Court addresses the merits of this claim *infra* pp. 46–47.

## B. Restucci's Substantive Claims

### 1. Involuntariness of the Guilty Plea

Because the Appeals Court adjudicated Restucci's claims on the merits, this Court must review its determination using the deferential standard outlined by the habeas statute, as amended by AEDPA. Under this provision, this Court cannot grant habeas relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2000).

As a preliminary matter, this Court's duties under AEDPA are somewhat hindered by the Appeals Court's decision because the Appeals Court incorporated arguments from the Commonwealth's brief, en masse, as the basis of the decision, without articulating the precise reasons for its holding. The court stated that:

[T]here was no abuse of discretion or other error in the Superior Court's deni-

al of the defendant's various motions for the reasons set out in the Commonwealth's brief. The orders denying the defendant's motion for release for unlawful restraint, his amended motion for release from unlawful restraint, and his petition for writ of habeas corpus are affirmed.

Resp't List of Exhibits, Ex. 5 (*Commonwealth v. Restucci*, No. 97–P–1840, Mem. and Order Pursuant to Rule 1:28).

Generally, courts should avoid incorporating counsel's arguments by reference in their opinions, but doing so may be unavoidable—from time to time—given the tremendous stresses state court systems endure amid a deluge of cases. *See, e.g., In re Las Colinas, Inc.*, 426 F.2d 1005, 1008 (1st Cir.1970) (noting that there is a "clash of interests" between "efficient administration" and the "undeniable right of losing counsel to be assured that his position has been thoroughly considered").[4]

■ Although the practice of adopting, by reference, the arguments from prevailing counsel's memorandum of law may make a habeas court's task of applying the deferential standards set out in section 2254 more difficult, it does not preclude proper habeas review and this Court will rule on Restucci's ineffective assistance claims based upon the record before it. *See, e.g., Harmon*, 410 Mass. at 430, 573

---

4. The Supreme Judicial Court of Massachusetts, however, has not looked with favor upon the practice of trial judges' adoption of verbatim findings or conclusions by prevailing counsel. *See, e.g., Commonwealth v. Harmon*, 410 Mass. 425, 430, 573 N.E.2d 490 (1991) (noting that the Supreme Judicial Court does "not recommend th[e] practice" of a judge's adoption of findings of fact from the Commonwealth's memorandum of law); *Commonwealth v. DeMinico*, 408 Mass. 230, 238, 557 N.E.2d 744 (1990) (stating that the Supreme Judicial Court has "criticized this practice"); *Lewis v. Emerson*, 391 Mass. 517,

524, 462 N.E.2d 295 (1984) (noting that the Supreme Judicial Court has "previously cautioned against a trial judge's verbatim adoption of a litigant's proposed findings and conclusions"). Although here the Massachusetts Appeals Court adopted the *arguments* of the Commonwealth's counsel (and not necessarily the findings of fact or conclusions of law), the same concerns are present. Specifically, "[t]he independence of the court's thought process may be cast in doubt" when the arguments or "findings proposed by one of the parties winds up as the court's opinion." *In re Las Colinas, Inc.*, 426 F.2d at 1009 (1970).

N.E.2d 490 (noting that the standard of appellate review does not change even though the judge adopted findings of fact from the Commonwealth's memorandum of law); *DeMinico,* 408 Mass. at 238, 557 N.E.2d 744 (1990) (stating that the findings of fact that the trial judge adopted verbatim from the Commonwealth's memorandum are still "formally" the judge's and "will stand if supported by evidence"), *quoting United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964); *see also Neverson v. Bissonnette,* 242 F.Supp.2d 78, 90 (D.Mass. 2003). The Court thus now turns to the arguments adopted by the Appeals Court, as they appeared in the Commonwealth's brief, to determine whether the Appeals Court used a standard contrary to clearly established federal law or was objectively unreasonable in applying the law to the facts of this case.

■ A state court decision is contrary to clearly established federal law only if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In reviewing Restucci's claim respecting the involuntariness of his guilty plea, the Appeals Court—by adoption—cited *Boykin v. Alabama,* which held that "[a]dmissibility of a confession must be based on a reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant." 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (internal citations omitted). The Appeals Court, therefore, ap-

plied a standard that was consonant with, not contrary to, established federal law.

Because the Appeals Court used a standard that was not contrary to established federal law, Restucci's claim may succeed only if the Appeals Court's opinion comprised an unreasonable application of federal law respecting the voluntariness of guilty pleas. A state court decision is deemed unreasonable when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413, 120 S.Ct. 1495. The First Circuit has explained that the appropriate inquiry is whether the state court's application of law was objectively unreasonable, that is, whether it had " 'some increment of incorrectness beyond error' ... great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall,* 303 F.3d 24, 36–37 (1st Cir.2002) (citations omitted). In assessing the reasonableness of the Appeals Court's analysis, this Court must look to the underlying constitutional standard for claims of an involuntary guilty plea. *See, e.g., Hurtado v. Tucker,* 245 F.3d 7, 16 (1st Cir.2001).

■ The Appeals Court's determination with respect to the voluntariness of Restucci's plea was objectively reasonable. A defendant's guilty plea must be made knowingly, intelligently, and voluntarily, with an understanding of the direct consequences of the plea and the various rights being surrendered. *Boykin,* 395 U.S. at 242–43, 89 S.Ct. 1709.[5] A guilty plea must be knowing and voluntary because it requires the waiver of three fundamental constitutional rights: the right to a jury trial; the right to confront one's accusers;

---

**5.** A guilty plea may be collaterally attacked only as to the issue of whether the plea was voluntary and intelligent. *United States v.*

*Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

and the privilege against self-incrimination. *Id.* at 243, 89 S.Ct. 1709. The question is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

■ In this case, the Appeals Court adopted the objectively reasonable analysis set forth by the Commonwealth's arguments as the basis for its opinion. Specifically, the court noted (by adoption) that the trial judge had executed a model plea colloquy with Restucci, which presented no patent or latent ambiguities. Resp't List of Exhibits, Ex. 4 at 24–29. In adopting the Commonwealth's brief, the court also dismissed the import of the various affidavits, submitted by Restucci, that "conclusorily stated" that Restucci was "threatened" and was in a "duressed state." *Id.* at 29–31. The court refused to credit the "self-serving" affidavits, ruling that the various "pressures" facing Restucci did not constitute coercion [6] and that the plea was entirely voluntary. *Id.*

The record and federal law support the Appeals Court's rulings. First, the record reflects a plea colloquy between Judge Banks and Restucci that was more than sufficient. Restucci was told what rights he was surrendering and was asked his reason for pleading guilty. He answered affirmatively to questions of his own guilt and indicated that he had not been coerced and was pleading guilty of his own free will. Restucci was asked if he suffered from any mental defect or was under the influence of alcohol or drugs at the time he pled, and Restucci answered he was not. The trial court inquired into Restucci's

education and background to evaluate his ability to understand what was taking place. Judge Banks clearly made a careful inquiry into the intelligence and voluntariness of Restucci's plea.

■ Furthermore, the record neither reflects impermissible coercion nor otherwise suggests the plea was involuntary. A plea is involuntary if "the accused does not understand the nature of the constitutional protections he is waiving" or "because he has such an incomplete understanding of the charge [against him] that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). In this case, however, there is no suggestion that Restucci misunderstood the constitutional protections he was waiving or the nature of the charge against him. Rather, Restucci's entire argument rests on the so-called "coercion" of his counsel, Nason's counsel, his family, and his friends. Obviously, state agents are not permitted to produce a plea through "mental coercion overbearing the will of the defendant." *Brady v. United States,* 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Restucci, however, does not suggest any improprieties by *state* actors. Rather, he argues that an assortment of *private* actors—his counsel, his co-defendant's counsel, and his family—"coerced" him.

■ Restucci simply misunderstands the notion of coercion. There are no threats of physical harm in the record and any suggestion that Restucci's will was overborne is overblown. A plea is not involuntary when simply motivated by the desire to "accept the certainty or probabili-

---

6. In support, the Commonwealth—and the Massachusetts Appeals Court by adoption—cited *Commonwealth v. Bolduc,* 375 Mass. 530, 536, 378 N.E.2d 661 (stating that "any

defendant who pleads guilty does so under the weight of an assortment of pressures that are intrinsic to such a situation").

ty of a lesser penalty rather than face a wider range of [sentencing] possibilities." *Id.* at 750–51, 90 S.Ct. 1463. In other words, Restucci's protestations of actual innocence—while potentially lamentable—are extraneous to the analysis here. There is nothing in the record to suggest, however, that counsel, friends, or family wanted anything but a more lenient penalty for Restucci. Of course, this Court is sensitive to the fact that every individual facing criminal charges endures undeniable and substantial pressures because of the obvious and severe consequences that may flow from conviction. If the pressures confronting Restucci were sufficient to render his plea "involuntary," however, this Court doubts that *any* guilty plea could survive collateral attack. For these reasons, Restucci's claim must fail.

### 2. Ineffective Assistance of Counsel

■ The Appeals Court's decision with respect to the ineffective assistance of counsel claim is due no deference in this case. Generally, a habeas court cannot grant habeas relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2000). If, however, a petitioner fairly presents and properly exhausts a claim before the state courts, but the state courts do not address or evaluate the claim, the deferential standard articulated in AEDPA does not apply. *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir.2001) (holding that AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in the state

courts). Therefore, when the state court does not address an issue fairly presented, the habeas court reviews the issue *de novo*. *Id.*

■ The Appeals Court did not adjudicate Restucci's ineffective assistance claim on the merits. Restucci fairly presented the ineffective assistance claim in his Rule 30 motion and in his appellate brief. The Appeals Court, however, merely incorporated the Commonwealth's brief as the basis for its denial of Restucci's appeal. This is problematic, as the Commonwealth's brief had not addressed the specific issue of ineffective assistance of counsel.[7] Even indulging the Appeals Court's questionable practice of incorporating the Commonwealth's brief by reference as the basis of decision, this Court rules that the Appeals Court did not address Restucci's ineffective assistance of counsel claim. Therefore, the Court shall review Restucci's claim *de novo*.

■ Nevertheless, Restucci's claim must fail. The federal standard for ineffective assistance examines whether defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth amendment" and whether counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, there are two prongs to the inquiry: performance and prejudice. In this case, Restucci claims that his trial counsel provided ineffective assistance by coercing him into pleading guilty and not protecting him from other "coercive influences." Pet'r Opp. to Resp't Mot. to Dismiss at 4. In the context of guilty pleas, the prejudice prong requires a petitioner to demon-

---

**7.** The lone reference to ineffective assistance of counsel in the Commonwealth's brief is located in a paragraph heading and is simply mentioned in passing. List of Exhibits, Ex. 4 at 23.

strate that counsel's advice was outside the range of competence demanded of attorneys in criminal cases "and that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

■ Restucci, however, cannot meet the first prong of the *Strickland* test; he cannot demonstrate that his counsel's performance was deficient. To support his claim of "coercion," Restucci has filed affidavits from himself and others stating he was pressured and "coerced" into pleading guilty. Several courts have held, however, that a full and fair plea colloquy provides substantial evidence that a defendant was not coerced into entering a guilty plea. *See, e.g., United States v. Kee*, 29 Fed. Appx. 625, 627 (2d Cir.2002) (unpublished opinion) [8] (stating that where defendant claimed he was coerced by his attorney but stated at the plea allocution "that he was satisfied with the representation he received from his attorneys and that no one had made any promises or taken any action to induce him" to plead guilty, an ineffective assistance of counsel claim must fail); *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir.1997) (holding that defendant's statements during the plea hearing undermined his claim of ineffective assistance based on alleged coercion by counsel); *Jones v. Page*, 76 F.3d 831, 845 (7th Cir.1996) (holding that defendant's ineffective assistance claim failed because defendant's "clear and unequivocal" statements

at the plea hearing belied his claims of coercion by his attorney); *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986) (holding that defendant's statements in open court at the plea hearing "sp[oke] strongly against" his ineffective assistance of counsel claim). Indeed, the Supreme Court has held that there is a "strong presumption of verity" that attaches to statements made in "open court." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

Similarly, Restucci's statements during the plea colloquy in this case undermine the credibility of the affidavits submitted in support of his ineffective assistance claim. At the plea hearing, Restucci stated that he was pleading guilty freely, willingly, and voluntarily; that no one forced him to plead guilty; that no threats had been made; that he had not been coerced in any way into pleading guilty; and that no promises had been made which induced him to plead guilty. Resp't List of Exhibits, Ex. 2, at 15–17. Restucci has produced no evidence beyond his self-serving affidavit and the affidavits of members of his family to corroborate his claim of coercion. The state court's plea colloquy, by contrast, was careful, candid, and complete, and Restucci's answers were clear and unequivocal. The Court recognizes that Restucci likely suffered great anxiety while he contemplated his decision to plead guilty, but such emotional pressures are simply unfortunate appendages of the criminal justice system. Anxiety coupled with candid and blunt advice does not rise

---

8. For the propriety of citing an unpublished Second Circuit opinion, see *Anastasoff v. United States*, 223 F.3d 898, 899–905 (8th Cir.2000) (Arnold, J.) (holding that unpublished opinions have precedential effect), *vacated as moot*, 235 F.3d 1054 (8th Cir.2000) (en banc), *Giese v. Pierce Chem. Co.*, 43 F.Supp.2d 98, 103 (D.Mass.1999) (relying on unpublished opinions' persuasive authority), and Richard S. Arnold, *Unpublished Opinions: A Comment*, 1 J.App. Prac. & Process 219 (1999). *See also* Richard L. Neumeier, *Ethics of Appellate Advocacy: Unpublished Opinions* (Oct.2001) (unpublished seminar paper, on file with author); *but see Hart v. Massanari*, 266 F.3d 1155, 1180 (9th Cir. 2001).

to the level of coercion. This Court honors the Supreme Court's proclamation in *Blackledge* and rules that Restucci's affidavits are insufficient as a matter of law to overcome the presumption of verity ascribed to his statements in open court. To hold otherwise is to eviscerate the import of the plea hearing.

■ Moreover, a reasonably competent criminal defense attorney likely *should* have urged Restucci to plead guilty. Restucci would have received life in prison had he been convicted of first degree murder at trial. Mass. Gen. Laws ch. 265, § 2 (2000). Moreover, three eyewitnesses identified Restucci as an assailant in the murder. Accordingly, Restucci's trial counsel advised his client—and correctly so—that pleading guilty to manslaughter would result in a much more moderate sentence. Counsel's advice was patently reasonable. Because Restucci's claim fails *Strickland's* performance prong, the Court need not decide the issue of prejudice. Therefore, the Court rejects Restucci's claim of ineffective assistance of counsel.

### 3. Denial of the Motion to Sever

■ Although Restucci's claim respecting the denial of his motion to sever may not be exhausted, the Court denies the claim on the merits.[9] The criminal justice system prefers joint trials of criminal defendants indicted together to promote efficiency and to avoid the impropriety and inefficiency of inconsistent verdicts. *See Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Moreover, the decision whether to sever is "largely left to the sound discretion of the trial court." *United States v. Magana,* 127 F.3d 1, 7 (1st Cir.1997); *see also Commonwealth v. Moran,* 387 Mass. 644, 658,

442 N.E.2d 399 (1982) (whether to allow severance is "usually a matter within the sound discretion of the trial judge"). Generally, a denial of a motion to sever is only improper where it "deprives a defendant of a fair trial, resulting in a miscarriage of justice." *Magana,* 127 F.3d at 7; *see also United States v. Houle,* 237 F.3d 71, 74 (1st Cir.2001) (holding that misjoinder is only reversed where it had "substantial and injurious effect or influence in determining the jury's verdict") (internal citations omitted). Furthermore, courts review denial of a motion to sever for "manifest abuse of discretion." *United States v. DeLeon,* 187 F.3d 60, 63 (1st Cir.1999); *accord Houle,* 237 F.3d at 74–75.

■ Notwithstanding Restucci's protestations of innocence, there is nothing in the record to suggest that the trial judge abused his discretion in refusing to sever Restucci's and Nason's trial. Indeed, there is nothing in the record that demonstrates any prejudice. Restucci makes no claims of mutually antagonistic defenses or a significant disparity in the evidence, which might constitute grounds for severance. Obviously, because there was no trial, the denial of severance did not affect the jury's verdict. The Court rules that the trial court did not abuse its discretion in refusing to sever Restucci's trial and, therefore, his claim fails.

### III. CONCLUSION

Accordingly, for the reasons set forth above, petitioner William Restucci's petition for a writ of Habeas Corpus [Docket No. 4] is DENIED. Furthermore, because the petition is denied on the merits,

---

**9.** As discussed above, a petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (2000).

Respondent's Motion to Dismiss the Petition [Docket No. 30] is DENIED as moot.

SO ORDERED.